## Taylor Borough Appeal.

Argued April 18, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Raymond T. Law,* with him *Ernest J. Gazda,* for appellants.

*William J. Oliver,* with him *Matthew D. Mackie,* and *Howell, Oliver & Price,* for appellees.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, June 28, 1962:

On these appeals two municipal subdivisions attack the jurisdiction of the Court of Common Pleas of Lackawanna County to entertain appeals by two coal mining corporations from the assessment for 1961 tax purposes of their coal properties by the Board for the Assessment and Revision of Taxes of Lackawanna County [Board]. The basis of their attack is that the

coal mining corporations did not *properly* and *timely,* under the provisions of the Act of June 26, 1931, as amended,[1] file a written appeal to the Board from the assessments.

The Act of 1931, supra, section 8, as amended, provides, inter alia: (1) the assessment roll shall be open to public inspection at the Board's office from the time of its completion[2] until the first day of November; (2) upon completion of the assessment roll, the Board shall give notice, by newspaper publication, of the completion of the roll, the place where and the time when the roll is open for public inspection and "shall, in the same notice, state that any person desiring to appeal from any assessment shall file with the board, on or before the first day of November, an appeal, in writing, designating the assessment appealed from"; (3) when the roll is completed but in no event later than the first day of October, the Board shall mail each property owner or person assessed, the value of whose property or personal assessment has not theretofore been separately fixed or the value of whose assessment has been changed, a notice of the change and the amount of the old and the new assessment; (4) this latter notice must state that any aggrieved person may appeal to the Board for trial by filing an appeal in writing on or before the first day of November; (5) the written appeal must set forth the assessment complained of and an address of the aggrieved person for notification purposes; (6) the Board is required to hear appeals beginning the first Monday of November, continue to meet until all appeals have been "heard and acted upon" and all appeals shall be

---

[1] Act of June 26, 1931, P.L. 1379, §8; Act of April 12, 1935, P.L. 27, §1; Act of May 26, 1949, P.L. 1848, §2; Act of June 30, 1951, P.L. 608, §1; Act of July 19, 1951, P.L. 1090, §1; 72 P.S. §§5348-5349.

[2] The assessment roll must be completed prior to the first day of October: Act of July 19, 1951, P.L. 608, §1, 72 PS §5348.

"heard and acted upon" not later than the first day of January; (7) on or before the fifteenth day of January the Board shall certify the assessed valuations to each appropriate political subdivision.[3]

Parmoff Corporation and Penn Anthracite Corporation, [taxpayers], corporations engaged in the mining and preparation of anthracite coal, own property in Scranton, Throop, Dickson City and Old Forge but the great bulk of their property is in the Borough of Taylor. The Borough of Taylor and the School District of the Borough of Taylor are the present appellants.

For a proper disposition of these appeals it is vital that we view, in chronological order, the various steps taken by both the taxpayers and the Board in connection with the assessment placed by the Board for 1961 on the taxpayers' property in the Borough of Taylor.

On October 21, 1960,[4] representatives of the taxpayers met with the chairman of the Board to request a reduction in the assessment for 1961 on the ground that a large portion of the taxpayers' coal properties had been flooded and the coal therein could not be recovered. At that time the Board had not completed the assessment roll, had not given notice by publication of the completion of the roll and had set no time for taking appeals from assessments. At the meeting on October 21, 1960, the chairman of the Board stated that he would arrange for a meeting of the full Board with representatives of the taxpayers to discuss a possible reduction in assessment for 1961. Three weeks later—November 15, 1960—a representative of the tax-

[3] In construing the 1931 statute, supra, we held in *Yeadon Borough Appeal*, 393 Pa. 552, 143 A. 2d 925, that the failure of the borough to appeal within the thirty day period prescribed in the statute necessitated a dismissal of its appeal.

[4] No assessment for 1961 tax purposes had *then* been made.

payers—in response to telephone calls—appeared at a Board meeting and a hearing before the Board was held at which were present *all* the members of the Board, its clerk, its counsel and its mining engineer as well as representatives of the taxpayers. At that meeting the taxpayers presented to the Board evidence to show that their coal properties had been flooded, the extent of such flooding and the expectation of further flooding, all for the purpose of securing a reduction in assessment for 1961.[5]

On or about December 13, 1960 the Board, having requested additional data from the taxpayers, was furnished such data at its meeting. On December 21, 1960, counsel for the taxpayers and for the Board orally agreed "that while these negotiations are pending it is considered that no final assessment has been made from which an appeal would lie" and the existence of that oral agreement is not questioned on these appeals.

On December 27, 1960 a representative of the taxpayers appeared at another Board meeting and supplied and explained to the Board certain additional data. Several weeks later—January 17, 1961—a representative of the taxpayers, again at the Board's request, appeared at a Board meeting and discussed a reduced assessment for 1961.

On February 24, 1961, the taxpayers received tax bills for that portion of their properties located in Scranton City.[6] Thirteen days later—March 9, 1961—

---

[5] It was not until several days after this meeting and 56 days after the statutorily prescribed time, to wit, on November 25-27, 1960, that the Board advertised the completion of the assessment roll, the time and place for its public inspection and notified aggrieved persons that appeals would be heard until December 31, 1960.

[6] This constituted the first notice of any kind whatsoever to the taxpayers that the Board had made any assessment of any of their properties and had not granted a reduction in assessment.

the taxpayers filed written appeals to the Board from the assessments upon which the tax bills were based. Sometime later in March,[7] the appeals of March 9, 1961 were amended to include all taxpayers' other properties in Lackawanna County not covered by the tax bills of February 24, 1961 and "as shown on maps or other documents previously supplied to the Board . . ."

While certification of valuation of taxpayers' properties was made to the Borough and School District of Taylor on July 21, 1961, *it was not until November 21, 1961 that the Board entered orders which formally and finally denied taxpayers' appeals for reductions in the 1961 assessment.* From these orders appeals were taken on November 30, 1961 to the Court of Common Pleas of Lackawanna County. At this stage the Borough and School District of Taylor intervened and filed petitions challenging the jurisdiction of the court to entertain these appeals. After hearing, the court below held that the taxpayers should not be prejudiced by the informality of the procedure before the Board nor by irregularities in the Board's records, stating "the taxpayer entered an appeal from the definitive assessment as soon as it had notice thereof, and made timely appeal . . . from the final decision of the Board . . . ." From the dismissal of the petition attacking jurisdiction these appeals were taken.

The position of appellants is that the taxpayers' appeals to the Board were not timely filed nor were the appeals in writing as required by the statute. Appellants argue that, under the statute, the appeals should have been filed on or before November 1, 1960 or that, under the notice by publication given by the

---

[7] The Board's records show this filing. Since the Board had no stamp to show the date of filing, the exact date of filing could not be shown but that the filing took place within thirty days after receipt of the tax bills is not disputed.

Board of the completion of the rolls and the date of appeals, the appeals should have been filed on or before December 31, 1960; under either theory, the appeals filed in March, 1961 were not timely. Appellants further argue that, since the appeals as filed in March requested an *abatement*, rather than a reduction in assessment, the appeals were not in writing as required by the statute. The statute requires that the appeals must be in writing, must set forth the assessment complained of and give the aggrieved person's address for the purpose of giving notice. An examination of the appeals filed indicates that they gave a description of the property, the present assessed valuation, the requested valuation for 1961 and the names of taxpayers' counsel. In our view, this constituted a substantial compliance with the statute and the appeals as filed were *written* appeals in every sense of the term. We shall examine, therefore, only the validity of appellants' position as to the timeliness of the filing of the appeals.

A review of the instant record clearly established certain facts: (a) in its procedure as to the assessment of the taxpayers' properties the Board did not comply with the provisions of the statute; (b) as a result thereof, it was not until on or about February 24, 1961 that any assessment was made of taxpayers' properties for 1961 of which taxpayers had any notice; (c) up until January 17, 1961 the assessment of taxpayers' properties was still in a discussion stage between taxpayers and the Board and had been in such stage since October 21, 1960; (d) upon receipt of the taxbills, which *for the first time* indicated to taxpayers that an assessment had been made, the taxpayers promptly and within a thirty day period filed appeals in writing to the Board; (e) up until that time there was no assessment for 1961 from which taxpayers could have appealed; (f) the Board by its actions considered taxpayers' appeals both properly and timely filed.

The statute requires that a person aggrieved by an assessment must take an appeal to the Board on or before November 1st and the Board in the case at bar, despite this provision of the statute, notified all persons aggrieved by an assessment that they must take an appeal on or before December 31, 1960. Both the statutory requirement and the Board's appeal deadline, however, presuppose the existence of an assessment. In the case at bar, *there was no assessment until on or about February 24, 1961 of which the taxpayers had any notice.* In fact, the subject of assessment for 1961 was still a subject for discussion by the Board as late as January 17, 1961. Under the circumstances there was nothing from which the taxpayers could appeal and neither the statutory nor the Board requirement as to the appeal deadline could possibly be satisfied. The failure to have the assessment roll completed on or before October 1, 1960 was that of the Board and the failure to have an assessment of taxpayers' properties made so that taxpayers could file an appeal on or before December 31, 1960 was likewise that of the Board. If the argument of appellants be accepted what was the assessment from which taxpayers could have appealed within the statutory or the Board's deadline for appeals? The Board's failure to comply with the mandated duties under the statute or to make an assessment of taxpayers' properties on or before the December 31st deadline should not be visited upon the taxpayer. To hold otherwise would constitute a denial of due process and fair procedure, both of which must be accorded by quasi-judicial tribunals as well as the courts: *Bily v. Allegheny County Board of Assessment,* 353 Pa. 49, 52, 44 A. 2d 250.[8] As Mr. Justice CLARK stated in *Breithaupt v. Abram,* 352 U.S. 432, 436: "due process is not measured by the yardstick of

---

[8] The Borough and School District, not the Board, question the timeliness and propriety of taxpayers' appeals.

personal reaction or the sphygmogram of the most sensitive person, but by that whole community sense of 'decency and fairness' that has been woven by common experience into the fabric of acceptable conduct." An acceptance of appellants' position with respect to the timeliness of these appeals to the Board would offend in every respect the principle of due process.

From October 21, 1960 until January 27, 1961, the Board and the taxpayers were engaged in discussions of assessments of the coal properties for 1961. The assessment and valuation of coal properties is highly complicated and involved and presents many and varied problems of engineering and a proper assessment and valuation can only be arrived at after a long and extensive investigation by the assessing authorities. Furthermore, rightly or wrongly, the Board, as a practical matter, in the fixing of an assessment of coal properties balances two interests: the interests of the municipalities which in the anthracite coal field look primarily to the coal companies for the tax monies to run their government and the interests of the taxpayers who are engaged in a "sick" industry and who own some coal properties which have been so affected by water as to render difficult, if not impossible, the removal of the coal. Such does not excuse but it may well explain the Board's delay in fixing the initial assessment of the taxpayers' coal properties. Such delay, however, should not penalize the taxpayers.

Furthermore, we fully agree with the court below that the informality of the Board's proceedings should not prejudice taxpayers. In *Susquehanna Collieries Company's Appeal,* 335 Pa. 337, 6 A. 2d 831, at page 344, we stated: "The failure of the county Boards of Revision to make proper records of their proceedings has resulted in confusion in many cases and has been commented on by the appellate courts. [citing cases] It is true that the statutes prescribe no form of pro-

cedure, and it is common knowledge that the hearings before these Boards are conducted with extreme informality. . . . Since a Board of Revision in acting upon appeals functions as a quasi-judicial tribunal, there is no reason why it could not employ the services of a stenographer to prepare such minutes as would disclose the substance of the appeal. These minutes would eliminate guesswork in subsequent stages of litigation, and would preserve the rights of the taxpayer and the county." Had the proceedings before the Board in the case at bar been conducted in the manner prescribed by the statute the taxpayers would have known exactly when an assessment was made and they could have appealed on or before the statutorily prescribed deadline.

We agree with the appellants (1) that the provisions of the 1931 Act, as amended, are mandatory (*Yeadon Borough Appeal,* supra) and (2) that an exhaustion of the statutory remedy before the Board is a requisite to the attachment of jurisdiction by a court of common pleas: *Susquehanna Collieries Company's Appeal,* supra, p. 343. However, the fact that the provisions of the 1931 Act are mandatory does not aid appellants in the instant factual situation. Noncompliance by the Board with the provisions of the Act rendered *impossible* a compliance by the taxpayers with the "time of appeal" provisions of the Act. It was certainly not the legislative intent to deprive a taxpayer of his rights because the assessing authority failed to perform its duties within the mandated time. To hold otherwise would completely nullify the rights of the taxpayers to due process.[9] Furthermore, in our view, the taxpayers did exhaust their statutory remedy before they appealed to the Court of Common Pleas. Within thirty days after the *first and only* assessment

[9] See: *Marcus Hook Borough School District v. Board for the Assessment and Revision of Taxes,* 359 Pa. 60, 58 A. 2d 26.

of which taxpayers had notice they filed appeals in writing and those appeals were considered and disposed of by formal orders of the Board. Under the circumstances there has been a compliance by taxpayers to the fullest extent possible with the statutory provisions. To deprive the taxpayers of their day in court under the circumstances presented in the case at bar would be most unfair, unjust and inequitable.

From the instant record it appears that the taxpayers' appeals to the Board from the assessment were properly and timely under the circumstances and, having thus exhausted their remedy before the Board, the jurisdiction of the court of common pleas properly attached when the taxpayers appealed to that court.

Order affirmed. Costs on appellants.